**STATE of Missouri, Respondent,**

v.

**Derrick HUMPHREY, Appellant.**

**No. WD 38084.**

Missouri Court of Appeals,
Western District.

Nov. 18, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 1986.

Application to Transfer Denied
Feb. 17, 1987.

Kathleen Murphy Markie, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before GAITAN, P.J., and DIXON and TURNAGE, JJ.

GAITAN, Presiding Judge.

Defendant-appellant, Derrick Humphrey was convicted by a jury of possession of a weapon in or about the premises of a correctional institution, in violation of § 217.-360.1(4) RSMo Supp.1984. He received a seven year sentence to run consecutively to the sentence he is presently serving. Defendant alleges the trial court erred as follows: (1) by denying his request for a mistrial after the prosecutor showed two knives to the jury that were neither admitted into evidence nor found on or near plaintiff's person or cell; and (2) by denying his request for a mistrial based upon the prosecutor's questioning defendant about possession of other weapons not the subject of the offense for which he was being tried. The judgment of the trial court is affirmed.

On March 4, 1985, defendant was an inmate in the Missouri State Penitentiary, housed in the group 1 area within the 5C section of the special management unit. On that date, at approximately 5:30 a.m., the emergency squad (E squad) conducted a search of housing unit 5C. The search was conducted by moving out approximately eight inmates at a time. Defendant was handcuffed and taken to the entry area to unit 5C, called the "sally port" area. There, Officer Joseph Lee Trueblood searched defendant in the view of Major Eberle who was outside a glass door. Defendant was ordered "to strip to nothing". Other inmates had been previously searched in the same room. According to Officer Trueblood, as he searched Humphrey, defendant reached with his right hand "inside his trousers", pulled out a knife-type weapon wrapped in toilet tissue with a rubber band, and handed it to Trueblood. On cross-examination, Office Trueblood stated there may have been a table with overalls on it in the sally port area during the search. Eberle testified he saw defendant hand the object wrapped in toilet paper to Officer Trueblood, but did not see where it came from.

According to defendant, he was wearing boxer shorts at the time of the search. He testified that he waited on a bench outside the sally port area while other inmates were being searched. After being searched, the inmates put on coveralls until arriving at the place where they could re-dress. Defendant testified that when he went into the sally port room he took a pair of coveralls from the table to put on after the cavity search, when an object hit his hand between the table and chair. Officer Trueblood took the object from defendant's hand. Defendant claims he never knew what the object was, and thought that it was wrapped in newspaper rather than toilet paper.

## I.

■ Defendant claims that the State showed to the jury two knives which were seized by corrections officers from defend-

ant's cellmate, Darryl Sadler. As a general rule the State is precluded from introducing into evidence weapons or other objects which are not connected with the defendant or the crime, and which do not otherwise possess probative value. *State v. Cross*, 699 S.W.2d 51, 54 (Mo.App.1985). However, weapons or objects connected with the defendant or the crime, when sufficiently identified, become relevant and possess probative value. *State v. Wynne*, 353 Mo. 276, 182 S.W.2d 294, 299 (1944); *State v. Thompson*, 559 S.W.2d 34, 35 (Mo.App.1977). Weapons are admissible into evidence even though they are not directly connected with the defendant when they bear on the crime with which he is charged. *State v. Young*, 701 S.W.2d 490, 496 (Mo.App.1985). Also, items are sufficiently connected to a defendant when they are found in the possession of his criminal associates. *State v. Hill*, 539 S.W.2d 521, 525 (Mo.App.1976).

■ Sadler's possession of the two knives in his shoes, and the defendant's possession of a knife in his trousers, were not separate, isolated incidents, but can be inferred as part of a concerted effort by both inmates to prevent the corrections officers from discovering these weapons in their cell. The two knives were connected to both the crime and the defendant, and had a bearing on the crime with which he was charged. Consequently, evidence of the two knives was arguably admissible, even though they were found in the possession of Sadler. *See, e.g., Hill*, 539 S.W.2d at 525–26.

Further, the record fails to disclose that any of the jurors actually saw the two knives that were taken from Sadler. Even if the jury had observed these knives, this did not constitute reversible error for the aforestated reasons.

## II.

Defendant's second point is related to his first. He asserts that the trial court abused its discretion in not declaring a mistrial after the prosecutor, during cross-

examination, asked defendant the following question:

> Q. Truth is, not only did you have this knife, but you had another knife in the cell, didn't you?

After the defendant answered, "No, I didn't", his attorney objected on the ground that the question involved "evidence of a different crime". Before the court could rule, the defendant again gave a negative answer to the question, stating, "I've never seen that" apparently referring to the knife that he was charged with possessing.

The court ultimately sustained defendant's objection, ordered the prosecutor's question "stricken from the record" and instructed the jury "to disregard the last question by counsel." The court, however, denied defendant's request for a mistrial.

■ The prosecutor generally is prohibited from cross-examining a defendant concerning prior criminal acts which have not resulted in either a guilty plea or a conviction where this cross-examination "is technically purely collateral" and relates only to the defendant's "general credibility". *State v. Dunn*, 577 S.W.2d 649, 653 (Mo. banc 1979). Although a trial court has the discretion to allow such questioning in some instances, such cross-examination must be closely scrutinized, since, as the court emphasized in *Dunn*, "[c]ross-examining a defendant as to alleged prior acts of misconduct, particularly where details are stated and the acts are somewhat similar to the case on trial, ... lends itself to the creation of substantial prejudice even though the answers are in the negative." *Id.*

■ In the present case, the prosecutor's inquiry, unlike the questioning in *Dunn*, was not "purely collateral" and did not relate merely to the "general credibility" of the defendant. As stated under Point I, the jury could reasonably have found from the evidence that the defendant and Sadler jointly possessed three knives in their cell, which they hastily attempted to conceal when they learned that officers were about to conduct a "shakedown" search of the inmates' cells.

■ Consequently, evidence that at least one of the two knives discovered in Sadler's possession belonged to the defendant would have been relevant to show defendant's intent to conceal the third knife discovered in his trousers, as well as his motive for concealing that weapon. Similarly, evidence that the defendant previously possessed another knife, and, with the aid of Sadler, also attempted to conceal this weapon was admissible under both the "common scheme or plan" exception and the exception that is sometimes known as the "complete and coherent picture" rule. *See State v. King*, 588 S.W.2d 147, 150 (Mo.App.1979).

It may be inferred from the evidence that defendant and Sadler jointly possessed three knives in their cell immediately prior to the "shakedown" search, and collectively attempted, albeit unsuccessfully, to prevent the E-squad officers from discovering this lethal contraband.

■ Second, the court sustained the appellant's objection to the question, and instructed the jury to disregard it. The subject was not mentioned again, and the State offered no evidence to contradict the defendant's denial, so it stood unimpeached. Under these circumstances, a mistrial was not required even if the question was objectionable. *State v. Alexander*, 706 S.W.2d 21, 23–24 (Mo. banc 1986); *State v. Young*, 701 S.W.2d 429, 434 (Mo. banc 1985), cert. denied, —— U.S. ——, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986). *See also State v. Teal*, 624 S.W.2d 122, 125–26 (Mo.App.1981); *State v. Williams*, 588 S.W.2d 70, 73–74 (Mo.App.1979).

All concur.