

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

June 17, 1992

Honorable Carl A. Parker
Chairman
Subcommittee on Insurance
Texas State Senate
P. O. Box 12068
Austin, Texas 78711

Opinion No. DM-127

Re: Whether V.T.C.S. article 224 *et seq.*, the Texas general arbitration statute, violates article I, section 13 of the Texas Constitution, the open courts amendment (RQ-199)

Dear Senator Parker:

You have requested our opinion as to whether V.T.C.S. article 224 *et seq.*, the Texas general arbitration statute, violates article I, section 13 of the Texas Constitution, the "open courts" provision. Article 224, first enacted in 1965, provides:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. A court shall refuse to enforce an agreement or contract to submit a controversy to arbitration if the court finds it was unconscionable at the time the agreement or contract was made. Provided, however, that none of the provisions of this Act shall apply to:
>
> (a) any collective bargaining agreement between an employer and a labor union;
>
> (b) any contract for the acquisition by an individual person or persons (as distinguished from a corporation, trust, partnership, association, or other legal entity) of real or personal property, or services, or money or credit where the total consideration therefor to be paid or furnished by the individual

is $50,000 or less, unless said individual and the other party or parties agree in writing to submit to arbitration and such written agreement is signed by the parties to such agreement and their attorneys;

(c) any claim for personal injury except upon the advice of counsel to both parties as evidenced by a written agreement signed by counsel for both parties. A claim for workers' compensation shall not be submitted to arbitration under this Act.

With certain exceptions, the statute declares a prior written agreement to arbitrate to be "valid, enforceable and irrevocable," except where the agreement itself is tainted, for example, by fraud, partiality on the part of the arbitrator, absence of an effective arbitration agreement,[1] or unconscionability.

Article I, section 13 of the Texas Constitution provides in part:

All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

The Texas Supreme Court has indicated that establishing an "open courts" violation requires compliance with a two-pronged test. First, the litigant "must show that he has a well-recognized common-law cause of action that is being restricted." In addition, "he must show that the restriction is unreasonable or arbitrary when balanced against the purpose ... of the statute." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex. 1990).

Initially, we note that every legislative act carries with it a presumption of constitutionality.

It is to be presumed that the Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable.

---

[1] V.T.C.S. art. 237.

*Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex. 1983) (quoting *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968)).

Article I, section 13 "prohibits legislative bodies from arbitrarily withdrawing all legal remedies from one having a cause of action well established and well defined in the common law." *Castillo v. Hidalgo County Water Dist. No. 1*, 771 S.W.2d 633, 636 (Tex. App.--Corpus Christi 1989, no writ). The clause "does not, however, apply to a statutory cause of action which expands the rights of an individual beyond those granted by the common law." *Id.*

Many of the causes of action covered by article 224, *et seq.*, are *statutory* rather than *common-law* causes of action, and therefore fall outside the ambit of article I, section 13. *See, e.g.*, Bus. & Com. Code § 17.41 *et seq.*, (Deceptive Trade Practices - Consumer Protection Act); Ins. Code arts. 21.21 (Unfair Competition and Unfair Practices), 21.21-2 (Unfair Claim Settlement Practices Act). Furthermore, article 224, *et seq.*, does not itself deprive a litigant of a remedy for any wrong he has suffered. Rather, it *limits* his choice of remedy to one that he himself has pre-selected. Even in those instances in which arbitration is mandatory, an aggrieved party may still bring a cause of action to show that the arbitration agreement itself is tarnished by fraud, unconscionability, or invalidity. To the extent, however, that article 224, *et seq.*, does impose restrictions on the common-law right to litigate those disputes which continue to be covered by article I, section 13, we do not believe that a court would find that those restrictions are either unreasonable or arbitrary.

Although the Texas general arbitration act has been in effect since 1965, common-law arbitration continues to exist in this state. *L. H. Lacy Co. v. City of Lubbock*, 559 S.W.2d 348, 351-52 (Tex. 1977). Prior to *L. H. Lacy Company*, "the Texas common law rule was that either party could revoke the agreement to arbitrate at any time" prior to the actual award. *Wylie Indep. School Dist. v. TMC Found., Inc.*, 770 S.W.2d 19, 21 (Tex. App.--Dallas 1989, writ dism'd w.o.j.). In *L. H. Lacy Company*, the court, while finding it unnecessary to actually overturn the common-law rule, made clear that it had no future in Texas. *Wylie Independent School District*, 770 S.W.2d at 21. Chief Justice Greenhill took the opportunity to extol the virtues of arbitration:

> Under the traditional common law, courts have refused
> specific enforcement to agreements to arbitrate *future* disputes.
> [Emphasis in original.] Either party to an executory agreement

providing for arbitration of future disputes has been allowed to revoke the agreement at any time before the arbitration proceeding resulted in an award. The only penalty for such revocation consisted of damages, if any, for breach of contract. . . .The rationale behind these rules rested on a "public policy" argument against allowing private persons to oust the courts of their jurisdiction to determine the rights and liabilities of parties to a contract. This notion was a result of early English precedent which was transferred to the United States and to Texas through our adoption of the common law. The doctrine has long since been abandoned in England by case law and by statute, and an increasing number of American jurisdictions have rejected the rationale by adopting modern and comprehensive arbitration statutes. . . . *The doctrine was evolved in an era when court congestion was not a major problem as it is today, and in modern times a policy encouraging agreements to arbitrate is preferable. In addition to alleviating some measure of the burden on the courts, arbitration in a commercial context is a valuable tool which provides business people, and all citizens, with greater flexibility, efficiency, and privacy.* . . . While it is unnecessary in this case to alter common law arbitration rules, the policy of refusing specific enforcement to executory arbitration agreements is not justifiable when the case fits within the common mold.

*L. H. Lacy Company*, 559 S.W.2d at 352 (emphasis added, footnotes omitted ).[2]

The quoted language would seem to indicate beyond all peradventure that the Supreme Court of Texas takes a highly favorable view of arbitration statutes,

---

[2]As a result of *L. H. Lacy Company*, a well-recognized common-law right, *i.e.*, to revoke an agreement to arbitrate at any time prior to the actual award, was abrogated, not by the legislature, but by the Supreme Court of Texas. *Wylie Independent School District*, 770 S.W.2d at 21-23. *L. H. Lacy Company* indicated, and *Wylie Independent School District* confirmed, that a litigant will no longer be permitted to overturn at will an agreement to arbitrate. The dissent in *Wylie Independent School District* argued that it was not the place of the court "to throw out the common law rule that has served our state and nation from the beginning." *Wylie Independent School District*, 770 S.W.2d at 23. But even the dissent would probably uphold the validity of a *statute, e.g.*, article 224, which did so: "Our system demands that this policy question be decided in the halls of the Legislature." *Wylie Independent School District*, 770 S.W.2d at 24.

suggesting that the easy revocation of arbitration agreements under common law was based on an outmoded idea of public policy. When such sentiments are coupled with the presumption of constitutionality which every statute commands, we believe that it is even more clear that the court would find that article 224, *et seq.*, does not impose any restrictions upon a litigant's right to judicial redress which are "unreasonable or arbitrary when balanced against the purpose of the statute." Accordingly, we conclude that article 224, *et seq.*, does not contravene article I, section 13 of the Texas Constitution.

## S U M M A R Y

V.T.C.S. article 224 *et seq.*, the Texas general arbitration statute, does not contravene article I, section 13 of the Texas Constitution, the "open courts" provision.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General