**STATE of Missouri, Plaintiff–Respondent,**

v.

**Lonnie R. FLEISCHER, Defendant–Appellant.**

No. 18386.

Missouri Court of Appeals,
Southern District,
Division Two.

March 31, 1994.

Donald R. Cooley, Springfield, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GARRISON, Judge.

Defendant was sentenced to a term of four years after being convicted by a jury of receiving stolen property, § 570.080.[1] In this appeal, he alleges that the trial court improperly permitted evidence suggestive of prior criminal conduct; and the court erred in permitting evidence of conversations between officers and an alleged co-conspirator, including tape recordings.

Defendant was charged with violating § 570.080 by disposing of an automobile on December 18, 1990, knowing or believing that it had been stolen. The evidence at trial, in addition to testimony by a representative of the car dealership concerning ownership and theft of the vehicle, consisted of the testimony of two undercover highway patrol officers and one Springfield police officer, as well as three tape-recorded conversations. Defendant presented no evidence.

Mike Rogers, an undercover officer for the Missouri Highway Patrol, testified that he had previously purchased stolen automobiles and equipment from Frank Boswell. On the date of the alleged offense Boswell, in a telephone conversation, offered to sell and Rogers agreed to buy a stolen Corvette. Rogers later received another call from Boswell which he recorded and in which he agreed to buy a new Mercury Sable stolen that day for $1,000 after Boswell told him that they had not been able to get the Corvette. After that call, Rogers contacted Officer Deeds of the Springfield Police Department and requested assistance in conducting surveillance of a location where he suspected the vehicle might be stored. Deeds commenced surveillance on the building and did see the new Sable inside. Rogers recorded a second telephone conversation with Boswell in which they agreed about the time and place for delivery of the car. Rogers told Boswell that a person known by him as "Kirt" from the "cattle deal" would be there to accept the car and pay for it. In fact, "Kirt" was Kirby Johnson, another undercover highway patrol officer.

At the appointed time, Rogers took Johnson to the North Town Mall parking lot where the transaction was to occur and saw Boswell arrive in a vehicle driven by Defendant's wife. Defendant then arrived after driving the Mercury Sable from the building Deeds had under surveillance. Johnson tape-recorded the conversations on the parking lot, including comments by Boswell that he would later obtain a Corvette to sell to Rogers, Boswell's statements indicating he did not want Johnson talking to Defendant, who he referred to as "my driver," and Defendant's reference to himself as an "in-between."

*I*

▮ Defendant alleges error in the introduction of the tape-recorded telephone conversations as well as the recording made by Officer Johnson when the car was delivered. He first claims that the taped state-

---

ments were hearsay and inadmissible. The State counters that the tapes were admissible under the co-conspirator exception to the hearsay rule. Under that exception, a statement of one conspirator made in furtherance of the unlawful combination may be admissible against another co-conspirator. *State v. Garton,* 371 S.W.2d 283, 287–88 (Mo.1963); *State v. Laws,* 668 S.W.2d 234, 238 (Mo.App. 1984). For the exception to apply there must be a showing, independent of the statement, of the existence of a conspiracy. *State v. Pizzella,* 723 S.W.2d 384, 388 (Mo. banc 1987); *State v. Cornman,* 695 S.W.2d 443, 446 (Mo. banc 1985); *State v. Leisure,* 810 S.W.2d 560, 570 (Mo.App.1991). The exception can apply even if the defendant is not actually charged with conspiracy. *State v. Pizzella,* 723 S.W.2d at 388; *State v. Leisure,* 810 S.W.2d at 570.

Evidence of a conspiracy, for the purpose of this exception, need not be conclusive, *State v. Hill,* 808 S.W.2d 882, 891 (Mo. App.1991), and may be by direct and positive proof or by inference from the facts and circumstances in evidence. *State v. Fuhr,* 660 S.W.2d 443, 447 (Mo.App.1983). Our review is limited to whether the trial judge had reasonable grounds to make his finding. *Id.*

Defendant contends that the statements on the tapes were not within the co-conspirator exception for two reasons. First, he argues that there was no independent proof of a conspiracy. Evidence was introduced, however, that within twenty minutes after Rogers and Boswell agreed about the time and place for the meeting, Defendant drove the stolen vehicle from the building that was under surveillance to the parking lot where the sale occurred; upon arriving, Defendant parked the car, handed the keys to Boswell and pointed it out to him; and Defendant referred to himself as an "in-between." This was the same car which had been discussed by Rogers and Boswell in the two telephone conversations. The appearance of "acting in concert" is sufficient circumstantial evidence of the existence of a conspiracy so as to allow the application of the co-conspirator exception to the hearsay rule. *State v. Pizzella,* 723 S.W.2d at 388–

389; *State v. Leisure,* 810 S.W.2d at 570; *State v. Hill,* 808 S.W.2d at 891. There was, therefore, sufficient independent evidence of a conspiracy.

Secondly, Defendant alleges that the statements were not in furtherance of the conspiracy. He specifically refers to the comments about the "cattle deal," obtaining a stolen Corvette, and an indication by Boswell that he did not want Johnson talking to his "driver." It is the object of the unlawful combination which determines whether the statements were in furtherance of the conspiracy. *See State v. Chernick,* 278 S.W.2d 741, 748 (Mo.1955); *State v. Johnson,* 714 S.W.2d 886, 890 (Mo.App.1986). Statements have been held to be in furtherance of a conspiracy if they somehow advance the objectives of the conspiracy instead of merely informing the listener of the declarant's activities. *United States v. Mayberry,* 896 F.2d 1117, 1121 (8th Cir.1990).

The statements about which Defendant complains in his brief advanced the objectives of the conspiracy in that they were part of the negotiations for the unlawful disposal of the stolen car. Included were statements designed to induce the sale of the Sable instead of the Corvette, and make arrangements for the completion of the transaction by someone other than Rogers. The comments about later obtaining a Corvette for Rogers could be viewed as evidence of a continuing conspiracy. *See State v. Grissom,* 804 S.W.2d 777, 779 (Mo.App.1990). Boswell's statements about not talking to his driver could be construed as an attempt to conceal the crime or defeat prosecution. *See State v. Grebing,* 787 S.W.2d 877, 880 (Mo. App.1990).

Defendant also contends that the "recordings required the use of inaccurate transcripts that lacked proper authentication by the jury." This refers to transcripts of the tape recordings which were passed to the jury to assist them in listening to the tapes. We gather from the argument section of Defendant's brief that his complaint is that the tapes were inaudible in some places, resulting in dashes being typed in the transcripts, which were themselves inaccurate

and never properly authenticated. He cites no authority in support, however.

Both Rogers and Johnson testified that the transcripts fairly and accurately reflected the conversations contained on the tapes. The transcripts were passed to the jury after they were told, in response to Defendant's objection, that the tapes instead of the transcripts were evidence, and that the transcripts were offered to them as an aid in listening to the tapes. Contrary to their request, the jury was not permitted to review the transcripts during deliberations. This procedure was within the discretion of the trial court. *State v. Wahby*, 775 S.W.2d 147, 154 (Mo. banc 1989).

■ Another contention raised by Defendant in this point is that introduction of the tape recordings violated his Sixth Amendment rights. He did not, however, develop this portion of the point in the argument section of his brief and support it with citation of authorities. This contention is, therefore, abandoned. *Newberry v. State*, 812 S.W.2d 210, 211 (Mo.App.1991).

Finally, Defendant contends that the tape-recorded conversations also introduced evidence of other crimes. That issue, however, is decided adversely to Defendant's contention in the next point.

This point is denied.

## II

Defendant contends that the trial court erred in not granting a mistrial, in failing to properly admonish the jury, and in admitting evidence suggesting prior criminal conduct by Defendant and Boswell. He relies on the rule that since a criminal defendant has the right to be tried only for the offense with which he is charged, evidence is generally inadmissible if it shows that the defendant has committed, been accused of, been convicted of, or definitely associated with another crime or crimes. *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc), *cert. denied* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989); *State v. Garrett*, 813 S.W.2d 879, 881 (Mo.App.1991); *State v. Watson*, 806 S.W.2d 677, 678 (Mo.App.1991).

■ Specifically, Defendant alleges that the two highway patrolmen and the Springfield police officer testified over his objection that they were working as undercover narcotics investigators. He argues that this suggests criminal activity on his part.

■ Officer Rogers testified that on the date in question he was assigned to the Division of Drug and Crime Control as an undercover narcotics investigator. The court overruled Defendant's motion for mistrial, and the witness then testified that his duties included the investigation of other crimes in addition to narcotics. The trial court is in the best position to determine any prejudicial effect of an incident. *State v. Hornbuckle*, 769 S.W.2d at 96. The declaration of a mistrial is a drastic remedy and should not be granted except in extraordinary circumstances, and the decision of whether to grant or deny a mistrial is addressed to the sound discretion of the trial court, which should be honored by appellate courts unless there is a clear showing in the record that the discretion was abused. *State v. Williamson*, 836 S.W.2d 70, 73 (Mo.App.1992). In this particular instance, we find no abuse of discretion.

■ Defendant also contends that Officer Kirby Johnson and Officer Mark Deeds testified, over objection, that they were undercover narcotics officers. Neither, however, testified that their work, on the date of this offense, involved drugs. Additionally, the record does not reflect that Defendant made any objection to their testimony on the basis now urged by him as error, and it was not raised in his motion for new trial. Accordingly, this complaint is not preserved for appellate review. *State v. Hornbuckle*, 769 S.W.2d at 92; *State v. Wright*, 810 S.W.2d 86, 89 (Mo.App.1991).

■ Since the error of which Defendant complains was not preserved for appellate review, he bears the burden of demonstrating plain error by showing that manifest injustice or a miscarriage of justice will result if it is left uncorrected. *State v. Hornbuckle*, 769 S.W.2d at 92–93. He must go beyond the mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights. *Id.* In the instant

case, there is no plain error falling within these guidelines.

■ Defendant also complains that Officer Rogers testified about other criminal activity which Defendant was not charged with committing. In particular, Officer Rogers testified as follows:

Q. How did this contact come about that you were at the North Town Mall to purchase this vehicle?

A. I had purchased some other stolen vehicles and other stolen equipment from this other individual by name of Frank Boswell.

Defendant moved for a mistrial "or certainly at the very least an admonition by the Court in front of the jury that this evidence not be considered." The motion for mistrial was denied and the trial court instructed the jury to disregard evidence or suggestions of any other crimes on the part of Boswell. As indicated earlier, the decision to grant or deny a mistrial is largely discretionary with the trial court, subject to our review for an abuse of discretion. We find none here. Officer Rogers proceeded to describe the conversations leading up to the purchase of the stolen vehicle. The comment in question is nothing more than a background statement explaining why Officer Rogers would be talking with Boswell about purchasing a stolen car. There was no indication that Defendant was linked in any way with the theft of any of the vehicles or equipment previously purchased from Boswell. *See State v. Hurst*, 612 S.W.2d 846, 855 (Mo.App.1981).

■ Defendant also contends that the trial court erred in permitting evidence concerning the possible theft of another vehicle. Rogers testified that in earlier telephone conversations that day he agreed to buy a new Corvette which Boswell said he could have in about an hour. Boswell later called, however, telling him that they couldn't get the Corvette but instead had a brand new Mercury Sable. Rogers agreed to buy the Sable for $1,000 after complaining that it was not a sports car and after Boswell said he knew Rogers wanted a sporty car; that the Sable "was there and he just popped it"; he thought the Sable "would work"; and that he would have a Corvette for him next week.

Later, when Johnson received and paid for the Sable on the parking lot, Boswell told him to tell Rogers that he would have a Corvette for him by Thursday.

■ The references to the theft of a Corvette likewise do not require reversal under the circumstances of this particular case. The Corvette was originally referred to because it was the car being requested. The fact that a stolen Mercury Sable was delivered and purchased rather than a stolen Corvette does not implicate Defendant in another crime. There is no showing that a Corvette was, in fact, stolen. The State is permitted to paint a complete and coherent picture of the crime charged and is not required to sift and separate the evidence. *State v. Henderson*, 826 S.W.2d 371, 374 (Mo.App.1992). As indicated earlier in this opinion, the subsequent reference to plans to steal a Corvette would be admissible as evidence of a continuing conspiracy. *See State v. Grissom*, 804 S.W.2d at 779. Accordingly, we find no prejudicial error in this regard.

■ Defendant also complains that the evidence included references to stolen cattle. During the recorded conversation when Rogers and Boswell discussed the details of where and when to meet to complete the transaction, Rogers said he was going to have "Kirt" pick up the car. He explained who he was talking about by saying "you remember Kirt, right? The guy on the cattle deal." Boswell indicated he remembered the occasion. Later, when Johnson got the Sable from Boswell, he said his name was "Kirt" and "I was up here looking for some cattle here a while back." These references to cattle or a "cattle deal" did not indicate what was referred to or whether a criminal offense was involved. Vague references such as this cannot be characterized as clear evidence associating Defendant with other crimes. *State v. Hornbuckle*, 769 S.W.2d at 96; *State v. Rhodes*, 829 S.W.2d 41, 44 (Mo.App.1992). As such, we are unable to attach prejudicial error to the passing references complained of by Defendant.

■ Defendant also alleges that error was committed during Officer Deeds' testi-

mony. Deeds was asked if he had ever had occasion to contact the residents of the address which was under surveillance when he saw the Sable. He said that he had in 1991 "during Operation Roundup." Defendant's objection was sustained but he requested no further relief. Having been granted all the relief requested, nothing further is preserved for review. *State v. McIlvoy,* 629 S.W.2d 333, 340 (Mo. banc 1982).

This point is denied.

Judgment affirmed.

FLANIGAN, P.J., and CROW, J., concur.

---

1. Except where otherwise indicated, all referen-     ces to statutes are to RSMo 1986, V.A.M.S.